Barnard N. Madsen (4626)
FILLMORE SPENCER LLC
3301 N. University Avenue
Provo, UT 84604
Telephone: (801) 426-8200
bmadsen@fslaw.com

Chris Wellman (Pro Hac Vice pending)
Scott Wellman (Pro Hac Vice pending)
WELLMAN & WARREN, LLP
24411 Ridge Route Drive, Suite 200,
Laguna Hills, CA 92653
Telephone: (949) 580-3737
cwellman@w-wlaw.com
swellman@w-wlaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ONYX LIFESTYLE LTD, a United Kingdom company,<br><br>Plaintiff,<br>v.<br><br>FIRST DATA MERCHANT SERVICES, LLC, a Florida limited liability company; ONE CONCIERGE, LLC, a Utah limited liability company; and DOES 1 TO 25,<br><br>Defendants. | **COMPLAINT**<br><br>**AND**<br><br>**JURY DEMAND**<br><br><br>Case No.  2:20-cv-00130-TS<br><br>Judge Ted Stewart |

1

Plaintiff Onyx Premier d/b/a Onyx Lifestyle complains of Defendants First Data Merchant Services, LLC and One Concierge, LLC and for a cause of action alleges as follows:

## THE PARTIES

1. Plaintiff Onyx Lifestyle Ltd ("Onyx") was incorporated in the United Kingdom and has its headquarters in London. Onyx was registered domestically in the State of Wyoming. Onyx's principal place of business is located at 3333 N. Digital Drive, Floor 5, Lehi, Utah 84043.

2. Defendant First Data Merchant Services, LLC ("First Data") is a Florida limited liability company with its principal place of business located at 5565 Glenridge Connector NE, Atlanta, Georgia 30342.

3. Defendant One Concierge, LLC ("OC") is a Utah limited liability company with its principal place of business located at 3300 N. Ashton Blvd, STE 200, Lehi, Utah 84043.

4. On information and belief, each of the DOES 1-25 herein was an agent or employee of one of the named Defendants, and proximately caused Plaintiff's damages while acting in such capacity.

5. The true names and capacities of those individuals and entities sued as DOES 1 through 25 are unknown to Plaintiff who, therefore, sues those Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

6. This action concerns a contract dispute between Onyx and the Defendants, in an amount totaling $1,566,868.00 resulting from Defendants' breach of contract and related conduct.

7. Diversity jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332.

8. Venue is proper pursuant to 28 U.S.C. §1391.

9. This Court has personal jurisdiction over the Defendants pursuant to Rule 4(k) of the Federal Rules of Civil Procedure and Utah Code Ann. §78B-3-205(1)-(3) in that this action related to Defendants' transaction of business within the State of Utah, contracting to supply service in the State of Utah, and allegedly causing an injury within the State of Utah.

## GENERAL ALLEGATIONS

**Onyx**

10. Onyx is a multi-level marketing ("MLM") company that engages in the business of providing pre-paid debit cards and other products.

11. As with other MLM companies, Onyx markets and sells its products through a network of independent distributors who are remunerated pursuant to a "Compensation Plan," which provides for a structured series of rankings, commissions, and bonuses based upon their sales volume and the sales volume of the number of distributors placed beneath them. Distributors earn income on their sales of Onyx's products, as well as the sales of the distributors aligned beneath them.

12. Independent distributors are integral to the success of an MLM company such as Onyx because they are the sole marketing arm for the company, and without them the company cannot survive.

13. As a result, the identities and contact information of its independent distributors constitute a proprietary trade secret of Onyx. In this regard, Onyx maintains the secrecy

of this information. Each distributor agrees that the identities and contact information of Onyx distributors are proprietary trade secrets and may only be used for the limited purpose of promoting Onyx.

**First Data**

14. First Data is a merchant processing company that provides its services worldwide, including in Utah.

15. On information and belief, First Data contracts with several Utah residents, and therefore has purposefully directed its activities within the State of Utah.

16. In addition, First Data maintains several offices and bank accounts within the State of Utah.

**Merchant Processing Services**

17. In order to pay commissions to its distributors, Onyx contracts with a third-party company, AU Card Limited ("AU"), to act as its merchant processor.

18. AU then uses its affiliate, OC, to carry out those services. On information and belief, AU and OC have common ownership and management. There is no separate identity between the two and AU and OC are the alter egos of each other.

19. However, neither AU nor OC performs the merchant processing services, but instead maintains a merchant account with defendant, First Data, to provide the services to Onyx. In other words, AU and OC merely act as an intermediary regarding the merchant processing services that are provided to Onyx, as all merchant processing services are actually performed by First Data. An illustration of how this arrangement is structured is shown below:



20. On information and belief, First Data was fully aware that it would be providing services for Onyx's business at the time it contracted with OC because the contract between OC and First Data specifically detailed services that were to be provided directly for the benefit of Onyx. In this regard, the real contract for services is between Onyx and First Data, not AU or OC.

**The Contract for Merchant Processing Services**

21. To initiate the services mentioned above, Onyx entered into a written contract with AU on or about May 6, 2019 ("Contract").

22. According to the terms of the Contract, AU agreed that it would provide "merchant processing" services to Onyx in exchange for a fee.

23. It was the intention of the parties that whenever a distributor would sell Onyx's products, the proceeds from the sale would be submitted directly to OC via credit card, who would then transfer the funds through its merchant account with First Data to be processed.

24. First Data would then clear and reconcile the payments, send the payments back to OC, who would then subsequently disburse commissions to Onyx's distributors according to Onyx's Compensation Plan.

**The Business Dispute**

25. In or around October 2019, Onyx and AU/OC had a business dispute. After entering the above-referenced Contract, Onyx discovered that AU and OC conspired with one another to hijack Onyx's distributor base by misappropriating contact information that was shared with them solely for the purpose of paying commissions.

26. In violation of the terms of the contract, AU and OC used the contact information provided solely for payment purposes to send out mass solicitation emails to all of Onyx's distributors, in attempts to recruit them into AU and OC's new competing MLM company, Club Swan.

27. At the time this was discovered, First Data was holding approximately $1,566,868 belonging to Onyx (the "Disputed Amount").

28. Currently, the Disputed Amount is still held in OC's merchant account with First Data, and thus, by definition, is held in the possession, custody and control of First Data. The Disputed Amount constitutes payments made by Onyx's distributors for Onyx's products that were directly transferred to OC via credit card transaction to be processed by First Data.

29. The Disputed Amount was to be processed and paid to Onyx and its distributors as commissions.

30. In an effort to persuade distributors to leave Onyx and join Club Swan, OC willfully withheld the Disputed Funds from Onyx so that its distributors would not receive their commissions.

31. By doing so, OC intended to disrupt the relationships between Onyx and its distributors by creating a sense of concern among Onyx distributors that Onyx was either going out of business, or absconding with its distributors' commissions. As a result of these actions, Onyx distributors have ended and continue to end their relationships with Onyx.

32. Since October 2019, Onyx has demanded the return of the Disputed Amount both from First Data and OC.

33. Onyx has informed First Data that the funds being held in OC's merchant account belong to Onyx and must be turned over immediately.

34. Despite Onyx's demands, First Data and OC refuse to return the monies.

35. As a result, Onyx has been damaged in an amount to be proven at trial.

## FIRST CLAIM FOR RELIEF

### CONVERSION

**(By Onyx against all Defendants including DOES 1 – 25)**

36. Onyx incorporates all preceding paragraphs as though fully set forth here.

37. Defendants have committed a willful interference with Onyx's property by taking and withholding the Disputed Funds that rightfully belong to Onyx.

38. Defendants' interference was done without lawful justification.

39. Onyx is entitled and has a legal right of possession to the Disputed Funds because they comprise revenue that was generated from the sale of Onyx's products, per the terms of the Contract. The Disputed Funds also belong to Onyx so they can be paid to its distributors based on their sales to third parties and as determined by its Compensation Plan. Finally, the bulk of the Disputed Funds belongs to Onyx itself and is used for its operations.

40. Onyx has been deprived of the Disputed Funds by Defendants.

41. Onyx has and continues to be entitled to immediate possession of the Disputed Funds.

42. Defendants' actions as described above were made under circumstances constituting willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Onyx. Onyx is therefore entitled to punitive and exemplary damages in an amount to be decided according to proof.

## SECOND CLAIM FOR RELIEF

## INTERFERENCE WITH CONTRACT

### (By Onyx against OC and DOES 1 – 25)

43. Onyx incorporates all preceding paragraphs as though set forth here.

44. OC intentionally interfered with Onyx's existing contractual relationships with each of its distributors by improper means.

45. OC interfered with these relationships by using the information provided by Onyx solely for the purposes of payment to solicit the distributors to join OC's competing MLM company, Club Swan.

46. OC further interfered with Onyx's contractual relationships with its distributors by withholding their commissions.

47. OC's interference of these relationships was done for an improper purpose and by improper means. As stated above, OC solicited Onyx's distributors by using contact information that it misappropriated from Onyx. OC also intended that by withholding commissions, it would induce distributors to terminate their relationship with Onyx and join Club Swan.

48. As a result of OC's actions, Onyx has been damaged in an amount to be proven at trial.

49. Defendants' actions as described above were made under circumstances constituting willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Onyx. Onyx is therefore entitled to punitive and exemplary damages in an amount to be decided according to proof.

### THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT – THIRD PARTY BENEFICIARY

### (By Onyx against OC and DOES 1 – 25)

50. Onyx incorporates all preceding paragraphs as though set forth here.

51. AU entered an oral contract with OC. According to the terms of that agreement, OC agreed to provide merchant processing services directly for the benefit of Onyx in exchange for a processing fee. In other words, whenever a distributor would sell Onyx's products, the proceeds would be submitted directly to OC via credit card, who would then transfer the funds through its merchant account with First Data to be processed. First

Data would then reconcile the payments, send the payments back to OC, who would then subsequently disburse commissions to Onyx's distributors in accordance to Onyx's Compensation Plan.

52. Onyx has paid all processing fees to OC.

53. OC breached the contract by withholding the Disputed Amount from Onyx. The Disputed Amount should have been processed and paid out both to Onyx and its distributors.

54. OC was not excused from performing its duties pursuant to the agreement.

55. As a result of the breach, Onyx has been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

## BREACH OF CONTRACT – THIRD PARTY BENEFICIARY

### (By Onyx against First Data and DOES 1 – 25)

56. Onyx incorporates all preceding paragraphs as though fully set forth here.

57. OC and First Data entered into a written contract. According to the terms of the contract, First Data agreed to provide merchant processing services directly for the benefit of Onyx in exchange for a processing fee.

58. First Data has received all processing fees pursuant to the contract.

59. First Data breached the contract by withholding the Disputed Amount from Onyx. The Disputed Amount should have been processed and paid out to Onyx for the benefit of Onyx and its distributors.

60. First Data was not excused from performing its duties pursuant to the agreement.

61. As a result of the breach, Onyx has been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

## CONSTRUCTIVE TRUST

### (By Onyx against First Data an DOES 1 – 25)

62. Onyx incorporates all preceding paragraphs as though fully set forth here.

63. First Data maintains possession of the Disputed Funds through wrongful acts of OC.

64. Onyx has an equitable interest in the Disputed Funds.

65. The Disputed Funds may be traced to OC's wrongful behavior.

66. An injustice would result if First Data were able to keep the Disputed Funds that rightfully belong to Onyx.

67. For these reasons, Onyx seeks the imposition of a constructive trust over the Disputed Funds.

## SIXTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

### (By Onyx against all Defendants and DOES 1 – 25)

68. Onyx incorporates all preceding paragraphs as though fully set forth here.

69. Onyx has conferred a benefit on OC and First Data in the form of providing them the Disputed Funds.

70. OC and First Data appreciated and had knowledge that Onyx conferred such benefit.

71. The retention of the Disputed Funds by First Data and OC would be inequitable as the funds do not belong to Defendants.

72. For this reason, the Disputed Funds must be returned to Onyx.

## SEVENTH CLAIM FOR RELIEF

## MISAPPROPRIATION OF TRADE SECRETS

### (By Onyx against all OC and DOES 1 – 25)

73. Onyx incorporates all preceding paragraphs as though fully set forth here.

74. The contact information and identities of the Onyx distributors constitute a proprietary trade secret of Onyx.

75. Such information is maintained under reasonable security and knowledge of this information is valuable to competitors of Onyx.

76. Defendants OC and DOES 1-25 have misappropriated these trade secrets by using contact information and identities of Onyx's distributors provided solely for payment purposes in order to compete directly with Onyx.

77. As a result of such misappropriation, Onyx has been damaged.

78. Onyx has been forced to expend attorney's fees and costs in an attempt to remedy the misappropriation of its trade secrets including bringing and prosecuting this action.

## RELIEF

1. For compensatory damages as the Court deems appropriate.
2. For punitive damages.
3. For the return of the Disputed Funds.
4. For the imposition of a constructive trust over the Disputed Funds.
5. For attorney's fees and costs.
6. For injunctive relief including that the Disputed Funds be turned over to Onyx or, at the very least, frozen until the court rules as to the rightful owner of the funds.

7. For any other remedy as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Onyx hereby demands a jury trial on all claims and issues triable to a jury.

DATED this 26th day of February, 2020.

                              FILLMORE SPENCER LLC

                              /s/ Barnard N. Madsen_____
                              Barnard N. Madsen
                              3301 N. University Avenue
                              Provo, Utah 84604
                              Telephone (801)426-8200

                              Chris Wellman (Pro Hac Vice pending)
                              Scott Wellman (Pro Hac Vice pending)
                              WELLMAN & WARREN, LLP
                              24411 Ridge Route Drive, Suite 200,
                              Laguna Hills, CA 92653
                              Telephone: (949) 580-3737