Barnard Madsen, Esq.
FILLMORE SPENCER LLC
At Jamestown Square
3301 N. University Avenue
Provo, Utah 84604
801-426-8200
Fax: 801-426-8208
www.fslaw.com

Chris Wellman, Esq., Pro Hac Vice
Scott Wellman, Esq., Pro Hac Vice
WELLMAN & WARREN LLP
24411 Ridge Route Drive, Unit 200
Laguna Hills, CA 92653
T: 949-580-3737
cwellman@w-wlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ONYX LIFESTYLE LTD, a United Kingdom company,<br><br>   Plaintiff,<br><br>v.<br><br>FIRST DATA MERCHANT SERVICES, LLC, a Florida limited liability company; ONE CONCIERGE, LLC, a Utah limited liability company; and DOES 1 to 25,<br><br>   Defendants. | **FIRST AMENDED COMPLAINT:**<br><br>1. **CONVERSION**<br>2. **INTERFERENCE WITH CONTRACT**<br>3. **BREACH OF CONTRACT – THIRD PARTY BENEFICIARY**<br>4. **BREACH OF CONTRACT – THIRD PARTY BENEFICIARY**<br>5. **CONSTRUCTIVE TRUST**<br>6. **UNJUST ENRICHMENT**<br><br>**[REQUEST FOR JURY TRIAL]**<br><br>Case No.  2:20-cv-00130-TS-CMR<br><br>Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero |

## THE PARTIES

1. Plaintiff Onyx Premier d/b/a Onyx Lifestyle ("Onyx") is a United Kingdom entity with its headquarters located at London, London ECAN 7AF, GB.

2. Defendant First Data Merchant Services, LLC ("First Data") is a Florida limited liability company with its principle place of business located at 5565 Glenridge Connector NE Atlanta, Georgia 30342.

3. Defendant One Concierge, LLC ("OC") is a Florida limited liability company with its principle place of business located at 3300 N Ashton Blvd, STE 200, Lehi, Utah 84043.

4. On information and belief, each of the Defendants herein are agents and employees of each of the other Defendants, and proximately caused Plaintiff's damages while acting in such capacity.

5. The true names and capacities of those individuals and entities sued as DOES 1 through 25 are unknown to Plaintiff who, therefore, sue those Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to allege their true names and capacities when ascertained.

## STATEMENT OF FACTS

### Onyx

6. Onyx is a multi-level marketing company – otherwise known as an MLM company- that engages in the business of providing pre-paid debit cards and other products.

7. As with other MLM companies, Onyx markets and sells its products through a network of independent distributors who are remunerated pursuant to a "Compensation Plan," which provides for a structures series of rankings, commissions, and bonuses based upon their sales volume and the sales volume of the number of distributors placed beneath them.

8. That is, a distributor earns income on his or her sales of Onyx's products, as well as the sales of the distributors aligned beneath him or her – hence, the multi-level structure.

9. The field of independent distributors are the life blood of an MLM company, including Onyx. This is because the independent distributors are the sole marketing arm for the MLM company such as Onyx, and without them the company cannot survive. Because of this, the identities and contact information of the independent distributors constitute a proprietary trade secret of Onyx. In this regard, Onyx maintains the identity and contact information of the distributors under secrecy, and each distributor agrees that such identities are proprietary trade secrets and may only be used for the limited purpose of promoting Onyx.

### First Data

10. First Data is a merchant processing company that provides its services worldwide, including Utah.

11. On information and belief, First Data contracts with several Utah residents, and therefore has purposefully directed its activities within the State of Utah.

12. In addition, First Data maintains several offices and bank accounts within the State of Utah.

**Merchant Processing Services**

13. In order to payout commissions to its distributors, Onyx contracts with a third-party company, AU Card Limited ("AU"), to act as its merchant processor.

14. AU then uses another company, OC, to carry out those services. On information and belief, AU and OC have common ownership and management.

15. However, in actuality, neither AU nor OC performs the merchant processing services, but instead maintains a merchant account with defendant, First Data, to provide the services to Onyx. In other words, AU and OC merely act as an intermediary regarding the merchant processing services that are provided to Onyx, as all of the merchant processing services are actually performed by First Data. An illustration of how this arrangement is structured is shown below:



16. On information and belief, First Data was fully aware that it would be providing services for Onyx's business at the time it contracted with OC. Indeed, it is believed that the contract between OC and First Data specifically details services that were to be provided directly for the benefit of Onyx. In this regard, both AU and OC are shams and the real contract for services is between Onyx and First Data.

**The Contract for Merchant Processing Services**

17. To initiate the services mentioned above, Onyx entered into a written contract with AU on or about May 6, 2019.

18. According to the terms of the contract, AU agreed that it would provide "merchant processing" services to Onyx in exchange for a fee. It was understood that whenever a distributor would sell Onyx's products, the proceeds would be submitted directly to OC via credit card, who would then transfer the funds through its merchant account with First Data to be processed. First Data would then clear and reconcile the payments, send the payments back to OC, who would then subsequently disburse commissions to Onyx's distributors in accordance to Onyx's Compensation Plan.

**The Business Dispute**

19. In or around October 2019, Onyx and AU/OC had a business dispute. Specifically, after initiating the above-referenced contract, Onyx discovered that AU and OC conspired with one another to hijack Onyx's distributor base by misappropriating contact information that was shared with them for purposes of paying commissions. AU and OC then used the contact information to send out mass solicitation emails to all of Onyx's distributors, trying to recruit them into AU and OC's new competing MLM company, Club Swan.

20. At the time this was discovered, First Data was holding, and still is holding, approximately $1,566,868 belonging to Onyx (the "Disputed Amount").

21. The Disputed Amount constituted payments made by Onyx's distributors for Onyx's products that were directly transferred to OC via credit card transaction and then processed by First Data.

22. The Disputed Amount was to be processed and paid out to Onyx and its distributors as commissions.

23. Currently, the Disputed Amount is held in OC's merchant account with First Data, and thus, by definition, is held in the possession, custody and control of First Data itself.

24. In an effort to persuade distributors to leave Onyx and join Club Swan, OC willfully withheld the Disputed Funds from Onyx so that its distributors would not receive their commissions. By doing this, OC intended to disrupt the relationships between Onyx and its distributors by creating a sense of concern amongst the field that Onyx was either going out of business, or, absconding with its distributors' commissions. As a result of these actions, Onyx distributors have begun and continue to end their relationships with Onyx.

25. Since then, Onyx has demanded the return of the Disputed Amount both from First Data and OC.

26. Regarding First Data, Onyx has informed it that the funds being held in OC's merchant account actually belongs to Onyx and should immediately be turned over.

27. Despite having demanded these funds, First Data and OC refuse to return the monies.

28. As a result, Onyx has been damaged in an amount to be proven at trial.

## COUNT 1

## CONVERSION

### (By Onyx against all Defendants including Does 1 – 25)

29. Onyx incorporates all preceding paragraphs as though fully set forth here.

30. Defendants have committed a willful interference with Onyx's property. Specifically, Defendants have taken and continue to withhold the Disputed Funds that rightfully belong to Onyx.

31. Defendants' interference of withholding the Disputed Funds was done without lawful justification.

32. Onyx is entitled and has a legal right of possession to the Disputed Funds because they comprise revenue that was generated from the sale of Onyx's products. While a portion of the revenue is intended to be disbursed as commissions to Onyx's distributors, the bulk of the revenue belongs to Onyx itself and is used for its operations.

33. Onyx has been deprived of the Disputed Funds.

34. Onyx has and continues to be entitled to immediate possession of the Disputed Funds.

35. Defendants' actions as described above were made under circumstances constituting oppression, malice, fraud, and represent a conscious disregard for the rights of Onyx. Onyx is therefore entitled to punitive and exemplary damages in an amount to be decided according to proof.

## COUNT II

## INTERFERENCE WITH CONTRACT

### (By Onyx against OC and Does 1 – 25)

36. Onyx incorporates all preceding paragraphs as though set forth here.

37. OC intentionally interfered with Onyx's existing contractual relationships. For instance, Onyx maintains contractual relationships with each of its distributors. OC interfered with these relationships by soliciting such distributors to join OC's competing MLM company, Club Swan. OC also interfered with the distributors by withholding their commissions.

38. OC's interference of these relationships was done for an improper purpose and by improper means. As stated above, OC solicited Onyx's distributors by using contact information that it misappropriated

from Onyx. OC also intended that by withholding payment of 1/5/2019, it would induce distributors to terminate their relationship with Onyx and join Club Swan.

39. As a result of OC's actions, Onyx has been damaged in an amount to be proven at trial.

40. Defendants' actions as described above were made under circumstances constituting oppression, malice, fraud, and represent a conscious disregard for the rights of Onyx. Onyx is therefore entitled to punitive and exemplary damages in an amount to be decided according to proof.

## COUNT III

### BREACH OF CONTRACT – THIRD PARTY BENEFICIARY

**(By Onyx against OC and Does 1 – 25)**

41. Onyx incorporates all preceding paragraphs as though set forth here.

42. AU entered an oral contract with OC. According to the terms of that agreement, OC agreed to provide merchant processing services directly for the benefit of Onyx in exchange for a processing fee. In other words, whenever a distributor would sell Onyx's products, the proceeds would be submitted directly to OC via credit card, who would then transfer the funds through its merchant account with First Data to be processed. First Data would then reconcile the payments, send the payments back to OC, who would then subsequently disburse commissions to Onyx's distributors in accordance to Onyx's Compensation Plan.

43. Onyx has paid all processing fees to OC.

44. OC breached the contract by withholding the Disputed Amount from Onyx. The Disputed Amount should have been processed and paid out both to Onyx and its distributors.

45. OC was not excused from performing its duties pursuant to the agreement.

46. As a result of the breach, Onyx has been damaged in an amount to be proven at trial.

## COUNTY IV

### BREACH OF CONTRACT – THIRD PARTY BENEFICIARY

**(By Onyx against First Data and Does 1 – 25)**

47. Onyx incorporates all preceding paragraphs as though fully set forth here.

48. OC and First Data entered into a written contract. According to the terms of the contract, First Data agreed to provide merchant processing services directly for the benefit of Onyx in exchange for a processing fee.

49. First Data has received all processing fees pursuant to the contract.

50. First Data breached the contract by withholding the Disputed Amount from Onyx. The Disputed Amount should have been processed and paid out to Onyx for the benefit of Onyx and its distributors.

51. First Data was not excused from performing its duties pursuant to the agreement.

52. As a result of the breach, Onyx has been damaged in an amount to be proven at trial.

## COUNT V

### CONSTRUCTIVE TRUST

### (By Onyx against First Data an Does 1 – 25)

53. Onyx incorporates all preceding paragraphs as though fully set forth here.

54. First Data maintains possession of the Trusted Funds through wrongful acts of OC.

55. Onyx has an equitable interest in the Trusted Funds.

56. The Trusted Funds may be traced to OC's wrongful behavior.

57. An injustice would result if First Data were able to keep the Trusted Funds that rightfully belong to Onyx.

58. For these reasons, Onyx seeks the imposition of a constructive trust over the Trusted Funds.

## COUNTY VI

### UNJUST ENRICHMENT

### (By Onyx against all Defendants and Does 1 – 25)

59. Onyx incorporates all preceding paragraphs as though fully set forth here.

60. Onyx has conferred a benefit on OC and First Data in the form of providing them the Trusted Funds.

61. OC and First Data appreciated and had knowledge that Onyx conferred such benefit.

62. The retention of the Trusted Funds by First Data and OC would be inequitable because such funds do not belong to these defendants. For this reason, the trusted Funds must be returned to Onyx.

## COUNTY VII

### MISAPPROPRIATION OF TRADE SECRETS

### (By Onyx against all OC and Does 1 – 25)

63. Onyx incorporates all preceding paragraphs as though fully set forth here.

64. The contact information and identities of the Onyx distributors constitute a proprietary trade secret of Onyx.

65. Such information is obtained under reasonable security and knowledge of this information is valuable to competitors of Onyx.

66. Defendants OC and Does 1-25 have misappropriated these trade secrets and using it to compete directly with Onyx.

67. As a result of such misappropriation, Onyx has been damaged.

68. Onyx has been forced to expend attorney's fees and costs in an attempt to remedy the misappropriation of its trade secrets including bringing and prosecuting this action.

## PRAYER FOR RELIEF

1. For compensatory damages as the Court deems appropriate.

2. For punitive damages.

3. For the return of the Trusted Funds.

4. For the imposition of a constructive trust over the Trusted Funds.

5. For attorney's fees and costs.

6. For injunctive relief including that the Disputed Funds be turned over to Onyx or, at the very least, frozen until the court rules as to the rightful owner of the funds.

7. For any other remedy as the Court deems appropriate.

Dated: April 27, 2020　　　　　　　　　　　　　　**WELLMAN & WARREN LLP**

　　　　　　　　　　　　　　　　　　　　　　　　By: ___/s/ Chris Wellman_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　Chris Wellman, Esq
　　　　　　　　　　　　　　　　　　　　　　　　　　　WELLMAN & WARREN LLP
　　　　　　　　　　　　　　　　　　　　　　　　　　　24411 Ridge Route Drive, Unit 200
　　　　　　　　　　　　　　　　　　　　　　　　　　　Laguna Hills, CA 92653
　　　　　　　　　　　　　　　　　　　　　　　　　　　T: 949-580-3737
　　　　　　　　　　　　　　　　　　　　　　　　　　　cwellman@w-wlaw.com

Dated: April 27, 2020　　　　　　　　　　　　　　**FILLMORE SPENCER LLC**

　　　　　　　　　　　　　　　　　　　　　　　　By: _/s/ Barnard Madsen_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　Barnard Madsen, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　　　　FILLMORE SPENCER LLC
　　　　　　　　　　　　　　　　　　　　　　　　　　　At Jamestown Square
　　　　　　　　　　　　　　　　　　　　　　　　　　　3301 N. University Avenue
　　　　　　　　　　　　　　　　　　　　　　　　　　　Provo, Utah 84604
　　　　　　　　　　　　　　　　　　　　　　　　　　　801-426-8200
　　　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 801-426-8208
　　　　　　　　　　　　　　　　　　　　　　　　　　　www.fslaw.com