IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ONYX LIFESTYLE LTD, a United Kingdom company,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FIRST DATA MERCHANT SERVICES, LLC, a Florida limited liability company; ONE CONCIERGE, LLC, a Florida limited liability company; and DOES 1 to 25,<br><br>　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br><br><br>Case No. 2:20-CV-130 TS-CMR<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order. For the reasons discussed below, the Court will deny the Motion.

## I.  BACKGROUND

Plaintiff Onyx Lifestyle Ltd. ("Onyx") is a multilevel marketing company.  Onyx markets and sells its products through a network of independent distributors.  In order to pay commissions to its distributors, Onyx contracted with AU Card Limited ("AU Card").  AU Card, in turn, contracted with Defendant One Concierge, LLC ("One Concierge") to carry out those services.

Plaintiff contends that, in reality, neither AU Card nor One Concierge performs these services, but they are instead performed by Defendant First Data Merchant Services ("First Data").  Defendants dispute this characterization of their respective roles.

Beginning around October 2019, the parties began to have a dispute.  Plaintiff contends that, at the time the dispute began, it discovered that First Data was in possession of over $1

million in funds that, it claims, belong to Onyx.  Defendants contest Plaintiff's assertion that these funds belong to Onyx.

Plaintiff brought this action against First Data and One Concierge on February 26, 2020.[1] Plaintiff asserted claims for conversion, interference with contract, breach of contract, constructive trust, unjust enrichment, and misappropriation of trade secrets.  Plaintiff's Amended Complaint removed the claim for misappropriation.  Onyx has filed a Second Amended Complaint, which is the subject of a motion to strike.

Over two months after filing this action, Plaintiff filed the instant Motion.  Plaintiff seeks an order releasing the disputed funds.  Defendant First Data states that it has no ongoing interest in the funds and does not oppose Plaintiff's request, provided it is absolved from liability by One Concierge and Onyx.[2]  However, One Concierge opposes Plaintiff's Motion.  AU Card has moved to intervene in this action and similarly opposes Plaintiff's request.  Additionally, AU Card is currently pursuing claims against Onyx in the United Kingdom.

## II.  DISCUSSION

To obtain a temporary restraining order, Plaintiff must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the

---

[1] Plaintiff originally named One Concierge, LLC, a Utah limited liability company, but later amended its complaint to name One Concierge, LLC, a Florida limited liability company. *See* Docket No. 25.

[2] First Data contends that it is not a proper party to this lawsuit.  Rather, it is a service provider to Bank of America Merchant Services ("BAMS"), and BAMS is the party that contracted with One Concierge.

injunction, if issued, will not adversely affect the public interest.[3]  Since Plaintiff requests an extraordinary remedy, its "right to relief must be clear and unequivocal."[4]

A.      IRREPERABLE HARM

"Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[5]  Demonstrating irreparable harm is "not an easy burden to fulfill."[6]

Irreparable harm means an injury that "must be both certain and great, and that it must not be merely serious or substantial."[7]  "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[8]  Thus, "the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[9]  This typically involves the type of injury that cannot be atoned for in money or when a remedy cannot be fashioned following a determination on the merits.[10]  "[S]imple

---

[3] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[4] *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).

[5] *Dominion Video Satellite, Inc. v. Echostar Satellite, Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted).

[6] *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

[7] *Dominion Video Satellite, Inc.*, 356 F.3d at 1262 (internal quotation marks omitted).

[8] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[9] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).

[10] *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[11]  Finally, delay in filing a motion for injunctive relief suggests a lack of immediacy and irreparable harm.[12]

Plaintiff argues that it is on the "brink of closing its business" and, without the sought-after funds, "Onyx will no longer have a business."[13]  In support of this argument, Plaintiff points to similarly-worded paragraphs in the Declarations of Travis Bott and Gregory Baum. Mr. Baum states:

> Currently, Onyx is striving to keep its doors open. The [disputed funds] are absolutely necessary for Onyx to keep operations going. Without those funds, Onyx has no way of paying commissions to its distributors. Up to now, Onyx has been using certain credit facilities to stay afloat, but these facilities have now been exhausted. Onyx, therefore, needs the money now.  It is imperative that some or all of the funds be released so Onyx can pay commissions. Otherwise, Onyx's distributors will end their relationship with the company, thus, causing the company to close down.[14]

Plaintiff's evidence fails to demonstrate the type of certain, immediate harm required for the issuance of injunctive relief.  Plaintiff provides only vague and conclusory statements that it needs "some or all" of the disputed funds.  Without those funds, or funds from another source, Plaintiff contends that it will be unable to pay commissions to its distributors.  Plaintiff goes on to state that if it cannot pay commissions, the distributors will end their relationship with Plaintiff, which will cause the company to close.  However, Plaintiff provides no detail as to how much money it has on hand, how much money it requires, when it is needed, who it will be paid

---

[11] *Heideman*, 348 F.3d at 1189.

[12] *See GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

[13] Docket No. 26, at 6.

[14] Docket No. 26-6 ¶ 16.

to, how many distributors might terminate their relationship with Onyx and when this might happen, and how payments to those distributors will help keep Onyx afloat.  Indeed, Plaintiff's proposed injunction would have the money released on a gradual timeline.  This, coupled with the fact that the parties have been disputing the payment of the funds for over six months, calls into question Plaintiff's claims that it will suffer irreparable harm if the funds are not immediately released.  In short, Plaintiff has shown a mere possibility of irreparable harm, which the Supreme Court has declared insufficient.  Therefore, the Court finds that Plaintiff has not met its burden on this element.

## B.    LIKELIHOOD OF SUCCESS

Plaintiff's likelihood of success on the merits is far from clear.  Plaintiff's claim to the disputed funds hinges on a series of text messages between Travis Bott and Chis Scanlon. Plaintiff contends that Mr. Scanlon admitted that the funds belong to Onyx, but the Court is not convinced those messages are as clear as Onyx suggests.  Further, the briefing on this Motion, the other motions filed in this case, and the ongoing litigation between Onyx and AU Card in the United Kingdom demonstrate that there are important factual and legal issues that must be addressed, including whether this is the proper forum.  Based upon this, the Court cannot conclude that Plaintiff's right to relief is clear and unequivocal.

## C.    BALANCE OF THE HARDSHIPS AND PUBLIC INTEREST

For substantially the same reasons, the Court cannot conclude that the balance of the hardships and the public interest favor the issuance of a temporary restraining order.

III.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Temporary Restraining Order (Docket No. 26) is

DENIED.

DATED this 9th day of June, 2020.

BY THE COURT:

_____

Ted Stewart
United States District Judge